1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAYNE F.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 3:23-cv-5716-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

defendant's denial of plaintiff's application for Disability Insurance Benefits (DIB). The

parties have consented to have this matter heard by the undersigned Magistrate Judge.

Dkt. 2. Plaintiff challenges the Commissioner's decision finding her not disabled. Dkt. 4,

Complaint.

    A. <u>Procedural History</u>

    Plaintiff filed her application for DIB on November 30, 2020, alleging an onset

date of November 22, 2020. AR 17, 286–87. For the purposes of her DIB eligibility, her

date last insured is December 31, 2024. AR 17. After her application was denied initially

and upon reconsideration (AR 127, 173), hearings were held before the ALJ on January

31, 2023 (AR 75–105), and April 7, 2023 (AR 106–26).

    The ALJ issued a decision on May 25, 2023, finding plaintiff not disabled. AR 14–

35. The ALJ found plaintiff had the following severe impairments: post-traumatic stress

1  disorder (PTSD); depressive disorder; anxiety disorder; arthritis; obesity; lupus; cubital

2  tunnel syndrome; carpal tunnel syndrome; stenosis; radiculopathy; headaches;

3  degenerative disc disease; degenerative joint disease; and fibromyalgia. AR 19. The

4  ALJ found plaintiff had the Residual Functional Capacity (RFC)

5  
6  
7  
8  
> to perform sedentary work, as defined in 20 CFR 404.1567(a), that does not require climbing of ladders, ropes, or scaffolds; that does not require more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; that does not require more than frequent handling or fingering; that does not require concentrated exposure to hazards or pulmonary irritants; that allows a break after 2 hours of work; and that involves predictable work settings and processes.

9  AR 22. Based on hypotheticals the ALJ posed to the Vocational Expert (VE) at the

10  hearing, the ALJ concluded that plaintiff could not perform her past work but could work

11  as an appointment clerk, reception clerk, or telephone solicitor. AR 28.

12  B. Analysis

13  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

14  denial of Social Security benefits if the ALJ's findings are based on legal error or not

15  supported by substantial evidence in the record. *Revels v. Berryhill,* 874 F.3d 648, 654

16  (9th Cir. 2017) (internal citations omitted). Substantial evidence is "such relevant

17  evidence as a reasonable mind might accept as adequate to support a conclusion."

18  *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court

19  must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995,

20  1009 (9th Cir. 2014).

21  Where the evidence would reasonably support affirming or reversing the decision

22  of the ALJ, the Court may not substitute its judgment for Commissioner's. *Burch v.*

23  *Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The Court must weigh both the evidence

24  

25

1   that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court

2   may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.*

3   Rather, only the reasons identified by the ALJ are considered in the scope of the Court's

4   review.

5       **1.  Medical Opinions**

6       Plaintiff argues the ALJ failed to adequately consider the medical opinions of PA

7   Lynette McLagan and Terilee Wingate, Ph.D. Dkt. 9 at 3–5.

8       Under the regulations applicable to claims, like plaintiff's, filed on or after March

9   27, 2017, an ALJ need not "defer or give any specific evidentiary weight . . . to any

10  medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R.

11  § 404.1520c(a). Rather, the ALJ must explain how he or she considered the factors of

12  supportability and consistency in evaluating the medical opinions. *Id.* § 404.1520c(a)–

13  (b). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or

14  inconsistent without providing an explanation supported by substantial evidence."

15  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

16      A.  PA McLagan

17      Consulting psychological examiner PA McLagan submitted an evaluation of

18  plaintiff in April 2021. AR 467–75. She opined plaintiff had fair limitations—defined as

19  "more than a slight limitation" but one in which a claimant is "still able to function

20  satisfactorily" in the given area—in several of her abilities, including in her ability to

21  interact with coworkers, supervisors, and the public, and adapt to the usual stresses of

22  a workplace environment. AR 474. She also wrote that plaintiff's overall prognosis was

23

24

25

1  "poor," and that "she would most likely struggle with the usual stressors of a typical

2  workplace environment." AR 474.

3       The ALJ found PA McLagan's opinion persuasive. AR 26. He noted that "any

4  difficulties that the claimant may have with concentration, persistence, pace, and

5  adaptation are addressed with limitations in timing of breaks, as well as predictability of

6  settings and processes." *Id.*

7       Plaintiff argues the ALJ failed to adequately address PA McLagan's statement

8  that plaintiff's prognosis was "poor" and that she would "struggle with the usual

9  stressors of a typical workplace environment." Dkt. 9 at 4.

10       The Court disagrees. PA McLagan's statement that plaintiff's prognosis was

11  "poor" was not an opined limitation the ALJ was required to discuss. *See* 20 C.F.R. §

12  1513(a)(3) (a "prognosis" is "other medical evidence" and not part of a "medical

13  opinion"). PA McLagan's statement that plaintiff would struggle with the usual stressors

14  of a work environment did not specify a precise limitation, and PA McLagan indicated

15  elsewhere plaintiff's ability to "adapt to the usual stresses of a workplace environment"

16  was "fair" and thus that plaintiff was "able to function satisfactorily" in that area. AR 474.

17  *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (certain parts of opinion were

18  "not useful because they failed to specify [the plaintiff's] functional limits" and thus "the

19  ALJ could reasonably conclude these characterizations were inadequate for

20  determining RFC"). Because the RFC "is the most [a claimant] can still do despite [her]

21  limitations," 20 C.F.R. § 1545(a)(1), PA McLagan's opinion that plaintiff was able to

22  "satisfactorily" adapt to the stresses of the workplace environment did not require any

23  additional limitations in the RFC.

24

25

1        B.  Dr. Wingate

2        Consulting psychologist Dr. Wingate completed an evaluation of plaintiff in

3    October 2022. AR 1713–17. She opined plaintiff had several moderate and marked

4    limitations, but that these limitations would last only six to eight months. *See* AR 1715–

5    16. The ALJ found Dr. Wingate's opinion "somewhat persuasive" and noted that Dr.

6    Wingate opined plaintiff's limitations would last only six to eight months, but that the

7    RFC "is assessed on a 12-month basis." *See* AR 26–27.

8        Plaintiff argues the ALJ erred because plaintiff "had already been that limited for

9    more than 12 months," as shown, according to plaintiff, by PA McLagan's opinion. *See*

10   Dkt. 9 at 5 (citing AR 474).

11       Dr. Wingate's opinion did not, itself, indicate plaintiff's limitations had already

12   lasted more than 12 months. *See* AR 1715–16. The ALJ therefore rationally interpreted

13   Dr. Wingate's opinion as only opining short-term limitations. Such limitations are not

14   included in the RFC. *See* SSR 23-1p ("Because of the duration requirement, we will not

15   include limitations in the RFC assessment that completely resolve, or that we expect to

16   completely resolve, within 12 months."); *see also Barnhart v. Walton*, 535 U.S. 212,

17   217–22 (2002) (upholding regulations interpreting duration requirement as requiring that

18   actual inability to engage in substantial gainful activity last or be expected to last more

19   than 12 months). Moreover, as discussed above, PA McLagan's opinion does not

20   support the claim that plaintiff possessed the same marked limitations as Dr. Wingate

21   opined for more than twelve months.

22       The ALJ did not err in his consideration of Dr. Wingate's opinion.

23   **2. Subjective Symptom Testimony**

24

25
                                          5

1    Plaintiff argues the ALJ erred in assessing her subjective symptom testimony.

2  Dkt. 9 at 5–10.

3    Plaintiff testified at her hearing that, due to pain caused by her impairments, she

4  had difficulties walking, sitting, bending, reaching overhead, stooping, and bending. *See*

5  AR 88–89. She testified that standing for prolonged periods would cause pain, that she

6  oftentimes had headaches and migraines, and that both the pain and her headaches

7  were distracting. AR 91–94. She also testified that, prior to her right arm surgery in

8  January 2023, she had difficulties typing, her fingers tended to get numb from a pinched

9  nerve, and she had difficulties gripping. AR 95–96. Finally, she testified that her

10  depressive disorder caused her to be unable to leave bed approximately once a week.

11  AR 102.

12    The ALJ's determinations regarding a claimant's statements about limitations

13  "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722

14  (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). The ALJ

15  found that plaintiff presented evidence of an underlying impairment which could be

16  expected to produce the alleged symptoms. AR 23. In such a circumstance, "the ALJ

17  can reject [plaintiff's] testimony about the severity of her symptoms only by offering

18  specific, clear, and convincing reasons," unless there is evidence of

19  malingering. *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273,

20  1281 (9th Cir. 1996)).

21    In so doing, "[t]he ALJ must state specifically which symptom testimony is not

22  credible and which facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

23  "General findings are insufficient; rather, the ALJ must identify what testimony is not

24

25

1    credible and what evidence undermines the claimant's complaints." *Brown-Hunter v.*

2    *Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick*, 157 F.3d at 722). The Court

3    "may not take a general finding" like "an unspecific conflict" and "comb the record to find

4    specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

5          Here, the ALJ made a general finding: he said that "the weight that can be given

6    to the claimant's symptom reports is undermined for the reasons discussed throughout

7    this decision. Inconsistencies undermine the weight that can be given the claimant's

8    symptom reports." AR 23. The ALJ, however, proceeded to summarize the medical

9    evidence of the record without referring to plaintiff's subjective testimony or identifying

10   inconsistencies between that testimony and the medical evidence. *See* AR 23–26. He

11   therefore failed to make specific findings with respect to plaintiff's testimony. In a similar

12   circumstance, where an ALJ "simply stated her non-credibility conclusion and then

13   summarized the medical evidence supporting her RFC determination," the Ninth Circuit

14   has found that "[t]his is not the sort of explanation of the kind of 'specific reasons' we

15   must have in order to review the ALJ's decision meaningfully, so that we may ensure

16   that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 804 F.3d at

17   494.

18         According to defendant, the ALJ validly discounted plaintiff's testimony because it

19   was inconsistent with medical evidence and her daily activities. *See* Dkt. 11 at 3–5.

20   Although the ALJ summarized the medical evidence and plaintiff's daily activities, the

21   ALJ did not describe this evidence as being inconsistent with plaintiff's testimony. *See*

22   AR 23–26. The Court cannot manufacture inconsistencies not relied on by the ALJ to

23   uphold the ALJ's determination. *Brown-Hunter*, 804 F.3d at 494 ("Although the

24

25

1    inconsistencies identified by the district court could be reasonable inferences drawn

2    from the ALJ's summary of the evidence, the credibility determination is exclusively the

3    ALJ's to make, and ours only to review. As we have long held, 'We are constrained to

4    *review* the reasons the *ALJ* asserts.'") (quoting *Connett v. Barnhart*, 340 F.3d 871, 874

5    (9th Cir. 2003)) (emphasis in original).

6          Moreover, the inconsistencies identified by defendant to not reach the entirety of

7    plaintiff's testimony. For instance, neither the ALJ nor defendant cite to any medical

8    evidence which purports to be inconsistent with plaintiff's testimony that she

9    experiences headaches which make it difficult to concentrate. *See* AR 22–27; Dkt. 11 at

10   3–5. Additionally, with respect to plaintiff's testimony about her difficulties with using her

11   fingers and typing, the ALJ discussed some of the evidence related to plaintiff's cubital

12   and carpal tunnel syndromes, noting that a single exam had "normal range of motion in"

13   some of her joints and that, after plaintiff underwent surgery, a test indicated her left

14   hand had normal grip and strength, straight leg raise tests were negative, and plaintiff

15   exhibited normal gait. AR 24 (citing AR 1711, 2008, 2011). This is not necessarily

16   inconsistent with plaintiff's testimony that she had difficulties writing and typing—none of

17   that evidence directly relates to her ability to use her fingers for manipulative functions.

18         With respect to plaintiff's activities of daily living, the ALJ noted plaintiff was able

19   "to drive, shop in stores, make meals, clean, and engage in home improvement

20   projects." AR 24 (citing AR 322–29, 383–86, 397–400). An ALJ may discount a

21   claimant's testimony based on daily activities that contradict their testimony. *Orn v.*

22   *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But here, there is no "reasonable inference

23   that such an inconsistency exists." *Ferguson*, 95 F.4th at 1203. No evidence suggested

24

25

1   plaintiff's activities involved prolonged sitting or walking. Nor did evidence suggest her

2   activities involved using her fingers frequently. Nor did the ALJ suggest plaintiff engaged

3   in these activities at times in which she had headaches.

4          In sum, the ALJ failed to give specific, clear, and convincing reasons for rejecting

5   plaintiff's testimony. An error that is inconsequential to the non-disability determination

6   is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If

7   the errors of the ALJ result in a residual functional capacity (RFC) that does not include

8   relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.*

9   Here, plaintiff's subjective testimony evidence suggested she was limited in several

10  ways not reflected in the RFC: she testified she had significant manipulative difficulties,

11  that she had difficulties sitting for prolonged periods, and that she had distractions and

12  pain resulting from headaches. Thus, the ALJ's error in failing to give specific, clear, and

13  convincing reasons was not harmless.

14     **3.  Lay Witness Statement**

15         Plaintiff argues the ALJ erred by failing to address the statement of plaintiff's

16  friend Chad. Dkt. 9 at 11. Chad completed a function report and a headache

17  questionnaire in December 2020. AR 314–21, 381–82. He lived with plaintiff at the time

18  the reports were completed and indicated he had known plaintiff for six years. AR 314.

19  He indicated plaintiff had difficulties with functions such as lifting, bending, standing, and

20  walking (AR 319) and that plaintiff had difficulties completing her daily functions (AR

21  314). He also indicated plaintiff had "2-3 headaches a week" and "1-2 major headaches

22  per month," and that her headaches typically last one or two days and cause plaintiff to

23  be unable to do her daily activities. AR 381.

24

25
                                          9

1    The ALJ did not address Chad's statement. *See* AR 22–27. Prior to the

2  implementation of the new regulations governing the evaluation of medical opinions, the

3  Ninth Circuit's rule was that, "[i]f the ALJ wishes to discount the testimony of the lay

4  witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*,

5  12 F.3d 915, 920 (9th Cir. 1993).

6    Defendant points out that, under the new regulations for evaluating medical

7  evidence, "the ALJ is 'not required to articulate how [they] consider evidence from

8  nonmedical sources' using the same criteria as required for medical sources." Dkt. 11 at

9  7 (citing 20 C.F.R. § 404.1520c(d)) (alteration in original). Yet, "an ALJ . . . must explain

10  why significant probative evidence has been rejected.'" *Kilpatrick v. Kijakazi*, 35 F.4th

11  1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393,

12  1394–95 (9th Cir. 1984)). This standard enables courts "to engage in meaningful review

13  of a disability claim." *Id.*

14    Under this standard, Chad's statement was significant and probative evidence

15  which the ALJ could not ignore – it suggested plaintiff had numerous functional

16  limitations based on his everyday observations of plaintiff as plaintiff's roommate. *Cf.*

17  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill*, 12 F.3d at 919–20

18  ("[F]riends and family members in a position to observe a claimant's symptoms and

19  daily activities are competent to testify as to her condition. . . . An eyewitness can often

20  tell whether someone is suffering or merely malingering. . . . [T]his is particularly true of

21  witnesses who view the claimant on a daily basis . . . .").

22    Defendant also argues that any error in failing to address the plaintiff's friend's

23  statement is harmless because "the same evidence that the ALJ referred to in

24

25

discrediting [the claimant's] claims also discredits [Chad's] claims." Dkt. 7 at 11 (quoting

*Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012)) (alterations in original). However,

the Court has found that the ALJ did not adequately consider plaintiff's claims, and,

therefore, it cannot find that the reasons given for discrediting plaintiff's claims are also

valid reasons for discrediting Chad's statement.

Thus, the ALJ erred by failing to give reasons for not accounting for Chad's

statement.

**4.  Transferable Skills**

Plaintiff challenges the ALJ's finding at step five that she had transferrable work

skills which would enable her to perform the positions identified by the ALJ. Dkt. 9 at

13–14.

In determining whether a claimant can perform work which exists in significant

number in the national economy, an ALJ must consider whether the claimant has skills

from past work which can be transferred to meet the requirements of skilled or semi-

skilled work activities of other jobs. *See* 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c),

404.1568(d)(1). If an ALJ determines a claimant has acquired transferable work skills

from past employment, the ALJ must identify the skills, and positions to which they may

be transferred. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1223–36 (9th

Cir. 2009).

The VE's testimony is ordinarily substantial evidence on which an ALJ may rely

in finding a claimant had transferable skills. *See Osenbrock v. Apfel*, 240 F.3d 1157,

1163 (9th Cir. 2001) (finding that testimony of VE that duties of past work provided skills

which were transferable and similar to other work was substantial evidence on which to

1    uphold ALJ's transferability determination); *see also Bayliss v. Barnhart*, 427 F.3d 1211,

2    1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation

3    for his or her testimony.").

4           Here, based on the VE's testimony (AR 115), the ALJ found Plaintiff had the

5    following transferrable skills from her past work as an administrative clerk: "information

6    giving, providing info[rmation] to people, answering, informing, customer service, taking

7    orders." AR 27. The ALJ then found, based on the VE's testimony, that these skills

8    would transfer to the semi-skilled positions which the ALJ identified Plaintiff could

9    perform at step five—appointment clerk, reception clerk, and telephone solicitor. AR 28.

10          Plaintiff raises several arguments with respect to the ALJ's transferability finding.

11   *See* Dkt. 9 at 13–14. First, plaintiff argues that the skills identified by the ALJ and the VE

12   are not "skills," but, rather, a mere "recitation of tasks." Dkt. 9 at 13–14. Plaintiff's

13   argument rests on a flawed premise: that a "task" cannot also be a "skill." SSR 82-

14   41(2)(a) defines a "skill" as

15          knowledge of a work activity which requires the exercise of significant judgment
            that goes beyond the carrying out of simple job duties and is acquired through
16          performance of an occupation which is above the unskilled level (requires more
            than 30 days to learn). It is practical and familiar knowledge of the principles and
17          processes of an art, science or trade, combined with the ability to apply them in
            practice in a proper and approved manner.
18
     The same ruling says that "[s]kills refer to experience and demonstrated proficiency with
19
     work activities in particular tasks or jobs" and, "[i]n evaluating the skill level of [past
20
     relevant work] or potential occupations, work activities are the determining factors." SSR
21
     82-41(2)(d).
22
            This definition of skills makes clear that the performance of "work activities"—
23
     which may also be tasks—are skills when those activities require "the exercise of
24

25
                                                 12

1 significant judgment" in the context of a skilled or semiskilled occupation, require the

2 development of "practical and familiar knowledge" regarding the principles and

3 processes the activity involves, and require the application of that knowledge "in a

4 proper and approved manner." SSR 82-41(2)(a). The ruling's emphasis on "work

5 activities" as "the determining factors" confirms this understanding. SSR 82-41(2)(d).

6 Indeed, many of SSR 82-41's examples of skills can readily be described as tasks:

7 "typing, filing, tabulating and posting data in record books, preparing invoices and

8 statements, operating adding and calculating machines."

9        The VE testified the skills identified by the ALJ were, indeed, skills, and that

10 those skills were likely acquired in plaintiff's past work. AR 115. The Court presumes

11 that the VE was familiar with the Commissioner's regulations and definitions of terms of

12 art such as "skills" when he gave his testimony. *See Terry v. Saul*, 998 F.3d 1010,

13 1012–14 (9th Cir. 2021). Absent contrary evidence, the ALJ reasonably relied on the

14 VE's testimony that plaintiff had acquired transferable skills. *See Osenbrock*, 240 F.3d

15 at 1163.

16        Second, plaintiff argues that "there is no evidence that it took [plaintiff] longer

17 than 30 days to learn the information she gave out," Dkt. 9 at 14, suggesting that the

18 identified skills do not meet the "30 days" requirement of SSR 82-41(2)(a). However,

19 SSR 82-41(2)(a) specifies that the "occupation" in which skills are acquired, and not the

20 specific skills themselves, must be "above the unskilled level," which means that the

21 occupation "requires more than 30 days to learn." This is not a question of whether

22 plaintiff herself required more than 30 days to learn the occupation, but, rather, whether

23

24

25
                                          13

1   "a person *can usually* learn to do the job in 30 days." 20 C.F.R. § 404.1568(a) (defining

2   "unskilled work") (emphasis added).

3          The ALJ found, based on the VE's testimony, that plaintiff's past relevant work

4   was semiskilled, rather than unskilled, work. AR 27. The Court presumes the VE was

5   familiar with Commissioner's definition of "unskilled work" when he testified that

6   plaintiff's past work was done at the semiskilled, rather than the unskilled, level. *See*

7   *Terry*, 998 F.3d at 1012–14. This testimony was substantial evidence on which the ALJ

8   reasonably relied. *See Bayliss*, 427 F.3d at 1218.

9          Finally, plaintiff argues that the RFC's limitation to "predictable work settings and

10  processes" is "inconsistent with the defendant's definition of a skill" because "'significant

11  judgment' would not be needed in a job with 'predictable work settings and processes.'"

12  Dkt. 9 at 14.

13         The ALJ must consider whether a reduced RFC prohibits the exercise of skills in

14  determining whether those skills would be transferable to other work. *See* SSR 82-

15  41(4)(a). But plaintiff does not explain, nor can the Court discern, why a position cannot

16  require an occupant to exercise significant judgment within the context of predictable

17  settings and processes. Indeed, it is not difficult to imagine positions where a worker

18  would do just that. For instance, the position of appointment clerk requires, among other

19  things, "schedul[ing] appointments with [an] employer or other employees for clients or

20  customers." DOT 237.367-010. The position's occupant might engage in a predictable

21  process to schedule appointments and do so in a predictable setting while nevertheless

22  exercising significant judgment in determining when appointments are scheduled and

23  how to interact with clients and customers. Thus, the VE's testimony that a person

24

25

1   limited to predictable settings and processes could perform the positions identified is

2   substantial evidence on which the ALJ reasonably relied. *See Bayliss*, 427 F.3d at

3   1218.

4          In sum, the Court finds no error in the ALJ's determination that plaintiff

5   possesses transferable work skills.

6      **5.  Remedy**

7          Plaintiff asks the Court to remand the case with directions to award benefits. Dkt.

8   9 at 15–18. "'The decision whether to remand a case for additional evidence, or simply

9   to award benefits . . . is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d

10  664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

11  1987)). The Court "generally remand[s] for an award of benefits only in 'rare

12  circumstances.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir.

13  2014) (quoting *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)).

14         A remand for award of benefits is proper only if

15         (1) the record has been fully developed and further administrative proceedings
           would serve no useful purpose; (2) the ALJ has failed to provide

16         legally sufficient reasons for rejecting evidence, whether claimant testimony or
           medical opinion; and (3) if the improperly discredited evidence were credited as

17         true, the ALJ would be required to find the claimant disabled on remand.

18  *Trevizo*, 871 F.3d at 682–83 (quoting *Garrison*, 759 F.3d at 1020). Even if each element

19  is satisfied, the Court retains discretion to remand for further proceedings. *See Leon v.*

20  *Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The Court should "remand for further

21  proceedings when . . . an evaluation of the record as a whole creates serious doubt that

22  a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. "If additional proceedings

23

24

25

1   can remedy defects in the original administrative proceeding, a social security case

2   should be remanded for further proceedings." *Trevizo*, 871 F.3d at 682 (cleaned up).

3          The Court has found that the second element of the credit-as-true test is

4   satisfied—the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's

5   subjective testimony and Chad's statement. However, the Court finds that there are

6   ambiguities in the record for which further proceedings would serve the useful purpose

7   of allowing the ALJ to resolve, and that the improperly evaluated evidence would not

8   necessarily direct a finding of disability. For instance, the record as ambiguous as to the

9   frequency with which plaintiff experienced migraines which would impact her work

10  performance. *Compare* AR 94 (plaintiff testifying she has a migraine only twice a year)

11  *with* AR 381 (Chad indicating plaintiff had "1-2 major headaches per month").

12         Plaintiff argues that her testimony that she has difficulties using her fingers, if

13  credited as true, would direct a finding of disability under SSR 96-9p. Dkt. 9 at 17. That

14  ruling states that "[a]ny significant manipulative limitation of an individual's ability to

15  handle and work with small objects with both hands will result in a significant erosion of

16  the unskilled sedentary occupational base." SSR 96-9p. But having found that the ALJ

17  reasonably relied on the VE's testimony that plaintiff was capable of semiskilled work,

18  this statement does not direct a finding of disability in this case. And as plaintiff

19  acknowledges, plaintiff underwent surgery related to her manipulative limitations during

20  the relevant time – which the ALJ only briefly considered. *See* Dkt. 9 at 10 ("Whether or

21  not [plaintiff] ever regained her normal handwriting is not answered in the current record

22  . . . ."). She testified she experienced some improvements post-surgery. *See* AR 96.

23  This raises further ambiguities related to both the period in which plaintiff may have

24

25
                                        16

1    experienced disability, and the effectiveness of treatment, that must be resolved on

2    remand. *Cf. Dominguez v. Colvin*, 808 F.3d 403, 409–10 (9th Cir. 2015) (as amended)

3    ("When further proceedings are necessary to determine the onset date, it is appropriate

4    to remand for those proceedings.").

5                                    <u>CONCLUSION</u>

6              Based on the foregoing discussion, the Court concludes the ALJ improperly

7    determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and

8    remanded for further administrative proceedings including a de novo hearing.

9

10             Dated this 3rd day of May, 2024.

11                                                          *Theresa L. Fricke*
                                                           _____
12                                                         Theresa L. Fricke
                                                           United States Magistrate Judge
13

14

15

16

17

18

19

20

21

22

23

24

25